## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |  |
|---|---|---|
| **ANGELA HARWOOD BRENT,** individually, and on behalf of all other similarly situated participants of the William D. Meeker Enterprises, Inc. Employee Stock Ownership Plan, and derivatively on behalf of Nominal Defendant William D. Meeker Enterprises, Inc. | ) ) ) ) ) ) ) ) |  |
|                  Plaintiff, | ) ) |  |
| vs. | ) ) ) | Case No. |
| **WILLIAM D. MEEKER**, individually and in his capacity as a Director of William D. Meeker Enterprises, Inc.; **FRANCES RENEE HAND**, individually and in her capacity as a Director of William D. Meeker Enterprises, Inc.; and **DUANE TOLANDER**, in his capacity as Trustee of the William D. Meeker Enterprises, Inc. Employee Stock Ownership Plan, | ) ) ) ) ) ) ) ) ) ) |  |
|                  Defendants. | |  |

_____

### VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT
### FOR DAMAGES AND INJUNCTIVE RELIEF WITH DEMAND FOR JURY TRIAL

Plaintiff, Angela Harwood Brent ("Plaintiff"), brings this action in her individual capacity and on behalf of all other similarly situated participants in the William D. Meeker Enterprises, Inc. Employee Stock Ownership Plan (the "ESOP"), which covers substantially all employees of William D. Meeker Enterprises, Inc. and its subsidiaries (William D. Meeker Enterprises, Inc. and its subsidiaries are collectively referred to herein as the "Company;" singularly, William D. Meeker Enterprises, Inc. is referred to herein as

"WDME"), and derivatively against the Board of Directors of WDME, and sues William D. Meeker, in his individual capacity, in his capacity as a fiduciary of the ESOP, and in his capacity as Chairman of the Board of Directors of WDME ("Meeker"), Frances Hand, in her individual capacity, in her capacity as a fiduciary of the ESOP, and in her capacity as a Director of WDME ("Hand"), and Duane Tolander, in his capacity as the ESOP Trustee ("Tolander") for violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(2) and (3) ("ERISA"), including for breach of their fiduciary duties and as further alleged below.

## INTRODUCTION

1.     Plaintiff is the current President of WDME and is a participant in the WDME ESOP.

2.     Plaintiff brings this class action in her individual capacity as a WDME ESOP Participant ("Participant") on behalf of herself and all other similarly situated Participants and asserts a claim against all Defendants for breach of fiduciary duty pursuant to § 502(a)(2) and (3) of ERISA, and asserts against Meeker and Hand a claim for unjust enrichment.

3.     In her capacity as a fiduciary of the Company, Plaintiff brings this action derivatively pursuant to § 502(a)(2) and (3) of ERISA.

4.     WDME is the parent corporation of CIC Mortgage Credit, Inc. ("CIC Mortgage"); NACM Tampa, Inc. ("NACM Tampa"); NACM Services Corp. ("NACM"); CIC Business Credit, Inc. (d/b/a "NACM Nashville"); and Creditworthy Company ("Creditworthy"). Employees of each of those entities are participants in the ESOP.

2

5.    From October 31, 2006 through the present (the "Relevant Period"), the ESOP has held 100% of the shares of WDME's stock.

6.    The value of the ESOP (which holds all of WDME's stock) is directly related to the Company's performance.  As discussed in further detail below, any profits the Company earned should have been invested in the business in order to increase the retirement benefits accumulated by Participants under the ESOP.  Thus, actions that are in the best interest of the Company are also in the best interest of the ESOP, and thereby the Participants.

7.    Defendants, each having certain responsibilities regarding the management and operation of the ESOP's assets, breached their fiduciary duties to the Participants by, among other things, approving transactions and taking other actions that are in the personal interest of Defendants Meeker and Hand, but are not in the best interests of the Company.   In doing so, Defendants failed to avoid or ameliorate inherent conflicts of interest which crippled their ability to discharge their fiduciary obligations solely in the interest of the ESOP Participants and beneficiaries.

8.    As a result of Defendants' fiduciary breaches, as alleged herein, the value of the Company, and thus the value of the ESOP and the value of the retirement savings and anticipated retirement income of the Participants, has been severely and negatively impacted. Defendants continue to harm the Company and the Participants by continuing to drain funds from the Company for Meeker's and Hand's personal benefit.  Pursuant to ERISA, the Defendants, as breaching fiduciaries, are obligated to restore to the ESOP the losses resulting from their fiduciary breaches.

## JURISDICTION AND VENUE

9.     Plaintiff's claims arise, in part, pursuant to ERISA Section 502, 29 U.S.C. §1132.

10.     This Court has jurisdiction over this action pursuant to ERISA Section 502(e), 29 U.S.C. § 1132(e).

11.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ESOP is administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and the Company has its principal place of business in this district.  Further, many of the Participants are located in or within close proximity to this district.

## PARTIES

12.     Plaintiff is the current President and an employee of the Company, and is a Participant.  She is also a member of the Board of Directors (but has been excluded from Board activities), and therefore owes certain fiduciary duties to the Participants, which compel her to bring this action.

10.     Defendant Meeker is a Director of the Company.  During the Relevant Period, Meeker was a fiduciary of the ESOP within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of other ESOP fiduciaries (including the ESOP Trustee) and with respect to the management of the ESOP, he possessed and exercised discretionary authority or discretionary responsibility in the administration and operation of the ESOP, and he exercised authority or control with respect to the management of the ESOP's assets.

11.     In fact, Meeker appointed the ESOP Trustee.

12.     Defendant Hand is a Director of the Company.  During the Relevant Period, Hand was a fiduciary of the ESOP within the meaning of ERISA, because as a Director she exercised discretionary authority or discretionary control with respect to voting to appoint and or retain the ESOP Trustee (to the extent that Meeker did not do so individually) and with respect to the management of the ESOP, she possessed and exercised discretionary authority or discretionary responsibility in the administration and operation of the ESOP, and she exercised authority or control with respect to the management of the ESOP's assets.

13.     Defendant Tolander, is the trustee of the ESOP.  During the Relevant Period, Tolander was a fiduciary within the meaning of ERISA, because he possessed and exercised discretionary authority or discretionary responsibility in the administration and management of the ESOP and its assets.

## FACTUAL ALLEGATIONS

### Creation of the ESOP

14.     On or about November 1, 2006, the ESOP was created for the Company's employees.  *See* a true and accurate copy of the William D. Meeker Enterprises, Inc. Employee Stock Ownership Plan, as amended on March 26, 2012, attached hereto as **Exhibit "A."**

15.     Tolander was named the ESOP Trustee from its inception. *See* a true and accurate copy of the William D. Meeker Enterprises, Inc. Employee Stock Ownership Plan Trust Agreement attached hereto as **Exhibit "B."**

16.     Pursuant to Article IV, Section 4.1 of Exhibit B, Tolander's basic responsibilities as the Trustee, in addition to other responsibilities, are:

(a) The Trustee shall have the following categories of responsibilities:

(1)     Consistent with the Plan, to invest, manage, and control the Plan assets subject, however, to the direction of the Administrator or an Investment Manager if the Administrator should appoint such manager as to all or a portion of the assets of the Plan;

(2)     At the direction of the Administrator, to pay benefits required under the Plan to be paid to Participants, or, in the event of their death, to their Beneficiaries; and

(3)     To maintain records of receipts and disbursements and furnish to the Company and/or Administrator for each Plan Year a written annual report per Section 4.6.

17.     Prior to October 31, 2006, Meeker owned all of the issued and outstanding shares of the Company, which equaled 1,000 shares.

18.     On October 31, 2006, (i) the Company redeemed 500 shares of Meeker's stock in exchange for a promissory note in the amount of $2,150,000 (the "Redemption Note"); (ii) the newly created ESOP purchased the remaining 500 shares owned by Meeker in exchange for a promissory note in the amount of $2,150,000 (the "ESOP Note"); and (iii) the Company issued a $700,000 promissory note to Meeker in settlement of the Company's Accumulated Adjustment Account ("AAA"), which  was due to undistributed earnings for which Meeker had already been taxed.

19.     As a result, on October 31, 2006: (i) the Company (either directly or through the ESOP) incurred $5 million of obligations to Meeker; (ii) Meeker ceased to own any

shares of the Company; and (iii) the ESOP owned 100% of the Company. Accordingly, the Company became an ESOP-owned corporation.

20.    The Redemption Note provides for: (i) interest at 7% per annum; (ii) a 20-year term with maturity date of October 31, 2026; (iii) payments of interest only due on October 31 of each year; and (iv) a balloon payment due at maturity equal to the entire unpaid principal balance, together with all accrued but unpaid interest. A true and accurate copy of the Redemption Note is attached hereto as **Exhibit "C."**

21.    Pursuant to the terms of the Redemption Note, full or partial prepayments are permitted at any time without penalty. A 5% late charge applies to any payment not received within 15 days of the due date. At the option of Meeker, the entire principal outstanding and accrued interest becomes immediately due and payable if the Company's failure to make payment shall continue uncured for 10 days.

22.    With respect to the ESOP Note, it similarly provides for (a) interest at 7% per annum; (b) a 20-year term with maturity date on October 31, 2026; and (c) 20 years of equal monthly payments of principal and interest in the amount of $202,944.79 per year. A true and accurate copy of the ESOP Note is attached hereto as **Exhibit "D."**

23.    Pursuant to the ESOP Note, full or partial prepayments are permitted at any time without penalty. A 5% late charge applies to any payment not received within 15 days of due date.

24.    The AAA Note is similar to the other two notes and provides for interest at 7% per annum and a six-year term with maturity date on October 31, 2013. A true and accurate copy of the AAA Note is attached hereto as **Exhibit "E."**

25.     Pursuant to the AAA Note, full or partial prepayments are permitted at any time without penalty.  A 5% late charge applies to any payment not received within 15 days of due date.

26.     Although the ESOP owns all of the issued and outstanding shares of the Company, the ESOP Trustee does not have full discretionary authority and control with respect to the voting of shares in connection with electing the Company's Directors.  Instead, the following restrictive covenant applies:

> [The Trustee is empowered] to vote all Company Stock held by it as part of the [ESOP] assets; provided, however, that if any agreement entered into by the [ESOP] Trust provides for voting of any shares of Company Stock pledged as security for any obligation of the ESOP, then such shares of Company Stock shall be voted in accordance with such agreement.

### The Board of Directors and the ESOP Trustee

27.     On October 31, 2006, to accomplish the above-referenced stock repurchases, the Company entered into a Stock Purchase Agreement with Meeker.  A true and accurate copy of the Stock Purchase Agreement is attached hereto as **Exhibit "F."**

28.     The Stock Purchase Agreement provides that so long as the aggregate amount of principal and interest outstanding under the Redemption Note, the ESOP Note, and the AAA Note exceeds $200,000.00, Meeker shall have the right to nominate a majority of the Directors to be elected by the stockholders and that the Trustee agrees to vote all of the ESOP's shares for such nominees.

29.     Thus, although the Board of Directors of the Company is legally empowered to appoint and remove the ESOP Trustee, and has authority to amend or terminate the ESOP, Meeker has retained for himself the power to control the Board and through it, the Company.

30. In other words, Meeker can maintain his complete control over the Board and the Company by ensuring that the aggregate amount of principal and interest outstanding under the Redemption Note, the ESOP Note, and the AAA Note do not fall below $200,000.00.

31. In the Annual Report that Meeker originally had filed on March 9, 2016, he unilaterally listed himself as Chairman of the Board, Treasurer and Chief Executive Officer. Plaintiff was named as the President, Chief Operating Officer, and Secretary, and Gina Calabrese was listed as Vice President.

32. But, thereafter, to give himself added assurance that he would not lose control of the Board, Meeker filed an amended Annual Report on April 21, 2016, naming his wife, Hand, as a Director.

33. Pursuant to that April 21, 2016 Amendment, Meeker unilaterally removed Plaintiff as Secretary in favor of himself, and removed Gina Calabrese as Vice President.

34. None of these officer decisions were discussed in a Board meeting or were the result of a proper Board election; rather, Meeker unilaterally decided who should be a Director and Officer.

35. Nonetheless, upon information and belief, Meeker has since created Board minutes that falsely reflect that Board meetings occurred in which there were Board and Officer elections. After Plaintiff was unable to locate the Board meeting and minutes for a prolonged period of time, minutes of such meetings appeared in the file cabinet for the first time approximately one week prior to the filing of this action. If those meetings did in fact

occur, Plaintiff was never given notice of the meetings as a Director or Officer, and was not allowed to attend the meetings.

36.    The Trustee never questioned Hand's addition to the Board—including her relationship to Meeker—or Meeker's sole pronouncement as to who would serve as the Company's Officers.

37.    Plaintiff was told that she is the third Director, but has never seen minutes of the Board meetings that evidence her or any other Director's election.

38.    Not only does Meeker solely control the finances of the Company, but on numerous occasions, Meeker informed Plaintiff and others that Tolander "managed the Company," had the ability to "hire and fire" executives ( including Plaintiff), and Tolander had to approve all transactions of the Company.

39.    On the other hand, Tolander has never attended an ESOP Participants meeting, and when Plaintiff and others asked Tolander to review financial transactions that benefit no one other than Meeker, Tolander, in conscious disregard for his fiduciary duties to the Participants, defended Meeker.

**Defendants Have Breached their Fiduciary Duty to the ESOP**

40.    Through her role as President of the Company, Plaintiff began to question Meeker and Tolander regarding multiple financial transactions that did not appear to be in the best interest of the Company.

41.    In addition, during that same time period, Plaintiff became aware that CIC Mortgage, one of the WDME subsidiaries in the ESOP was in need of an audited financial statement and a certain certification known as a Statement on Standards for Attestation

Engagements No. 18 ("SSAE-18 Certification") (formerly known as a SSAE-16 certification) in order to meet the contractual requirements of its clients and vendors.

42.     Plaintiff, on behalf of the Company, therefore engaged undersigned counsel to assist the Company in obtaining such Certification.

43.     Due to Plaintiff's concerns about Meeker's questionable financial transactions, counsel recommended that the Company engage RGL Forensics through its principal, Diane L. Womack, C.P.A., A.B.V., C.F.F., C.F.E., to review the Company's books and records, because any financial issues could prevent the Company from obtaining a clean audited financial statement and the Certification needed.

44.     RGL Forensic's review of the Company's books and records revealed several areas of concern that were affecting the value of the stock held by the ESOP.  Ms. Womack therefore made Plaintiff, on behalf of the Company, aware of such issues, and Plaintiff shared those concerns with Meeker and Tolander and demanded that the Board and Tolander rectify any potential violations or breaches of their duties.  *See* Demand Letter attached as "**Exhibit G**."

45.     After receiving the Demand Letter and speaking to Ms. Womack regarding her concerns, Meeker met with Plaintiff and advised her that she could not give any proprietary information to Ms. Womack, or anyone else, and that Plaintiff could no longer make any decisions involving the Company.

46.     Meeker and Tolander appeared to dismiss Ms. Womack's concerns, stating that she "was confused."

47.     Meeker and Tolander also denied Plaintiff access to the ESOP's accounting records and advised that Ms. Womack would have to direct any requests for records to them.

48.     Meeker and Tolander thereafter met with Plaintiff to notify her that Tolander was not renewing Plaintiff's contract of employment when it expires on April 30, 2018.

49.     Meeker has also advised Plaintiff that she does not need to report to work after October 31, 2017; and later advised that he intends to "take over" running the company.

50.     Thus, it is clear that Meeker and Tolander plan to remove Plaintiff because she questioned the improper financial transactions that are harming the ESOP Participants. Meeker's and Tolander's actions constitute gross negligence and willful misconduct and breach of fiduciary duty, and each has failed to act in good faith on behalf of the ESOP or its Participants.

51.     Plaintiff rightfully questioned Meeker's and Tolander's financial decisions (as further discussed below), because not only did they harm the Company to Meeker's benefit, but they also prevented the Company from more aggressively repaying the indebtedness associated with the 2006 ESOP transaction (including the ESOP Note, the Redemption Note, and the AAA Note).

52.     For example, the Company has not complied with the terms of the Redemption Note.  In many years, payments have not equaled the required interest payment, causing the total outstanding balance (principal and accrued but unpaid interest) to increase to an amount larger than the $2,150,000 initial principal balance.

53.     Over a period of many years, no progress has been made in terms of repaying the Redemption Note, while debt owed to Meeker continued to grow because of the above-

market 7% interest rate.  The on-going debt obligation diminishes the value of the stock held by the ESOP.

54.    As of March 31, 2017, the unpaid principal balance of the Redemption Note was  approximately $2,109,000.00 (just $41,000 less than the $2,150,000 initial principal amount as of October 31, 2006).

55.    The balance due on the AAA Note was $700,000 on November 30, 2006, $480,000 on October 31, 2007, and $411,610.93 on October 31, 2008 (the last entry). Beginning with the financial statements for the year ended October 31, 2009, it appears that the AAA Note had been paid in full.

56.    Pursuant to the terms of the Redemption Note, the ESOP Note and the AAA Note, the AAA Note should not have been paid in full prior to the other two Notes.

57.    Nonetheless, as evidence that Tolander is not acting solely in the best interest of the ESOP and its Participants, he allowed Meeker to pay the AAA Note first, because as the Company's accountant, Dwight Reeves of Bunting, Tripp & Ingley, LLP, advised Ms. Womack, the AAA Note was paid out of order in lieu of paying Mr. Meeker his salary, because it was a tax advantage for Meeker to do so.  Notwithstanding the fact that Meeker's salary in 2009 was equivalent to his salary in the prior year.

58.    Although the Redemption Note allows for interest only payments, it was in the Company's and the ESOP Participants' best interest for the Redemption Note to be paid off as the Company had the ability to do so, so as to avoid unnecessary interest payments.

59.    In fact, Plaintiff has confirmed with a lender that WDME is eligible for a capital loan with a 7-year term with 5.25% to 5.5% interest that could be used to pay-off the Redemption Note to Meeker.

60.    Based on the amortization schedule that Dwight Reeves recently provided for the Redemption Note at Meeker's request, the Redemption Note is not due to be paid off until 2031, 5 years past its original term.

61.    Using Reeves's same calculations, allowing the Company to obtain the capital loan and pay-off the Redemption Note now would save the Company approximately $850,000 in interest payments.

62.    In addition, paying off the Notes due to Meeker would also remove Meeker's hold on the Board and would allow independent Directors to be nominated, because Meeker would no longer have the contractual ability to control the nomination of Directors to the Board.

63.    Meeker and Tolander have breached their fiduciary duties to the ESOP and its Participants by being unwilling to discuss or support, and flatly blocking, any efforts Plaintiff has made to obtain a loan to pay off the Redemption Note.

64.    In doing so, Meeker acted under a conflict of interest and favored himself over the ESOP and its Participants by insisting that loans with an above-market rate of return (that personally benefitted Meeker) remain outstanding.

65.    In 2011, Meeker began receiving weekly payments of the accrued interest on the Redemption Note.

66.     Payments did not begin to start impacting the principal balance on the note until 2016.

67.     That delay in making principal payments was to the detriment of the ESOP and its Participants, because interest continues to accrue and accumulate (to the personal benefit of Meeker) at an above-market 7% rate of return.

68.      The Company has had the financial ability to repay the Redemption Note, but Meeker and Tolander prevented such repayment by allowing the Company's funds to be diverted for Meeker's and Hand's benefit and by otherwise blocking repayment efforts suggested by Company management.

69.     In fact, Meeker boasted on occasion that the interest only payments were a windfall for him.

70.     Meeker and Tolander have publicly explained to the ESOP Participants that Meeker forwent those payments to "help" the Company during the recession.

71.     However, during those same time periods that Meeker claims that he forewent repayment on the Redemption Note, Meeker authorized substantial payments to himself from the Company, claiming that the payments were for his salary, bonuses, and expenses.

72.     Tolander has failed to question the payments that Meeker authorized to himself, including salary alone totaling at least $1,820,739 from 2007 through 2015 from NACM's payroll, despite the fact that Meeker's role was diminishing each year pursuant to Meeker's stated intentions in 2006 at the time that his stocks were redeemed.

73.     In fact, Meeker's employment contract with WDME expired as of October 31, 2015, at which time, upon information and belief, he advised the Company that he planned to retire.

74.     But, Meeker authorized a new employment agreement for himself for the period of November 1, 2015 through October 31, 2016 that purportedly provided for a salary of $20,000, although Plaintiff has been unable to locate a copy of that employment agreement.

75.     In October 2016, Meeker again authorized a new employment contract with himself and advised Plaintiff that Tolander told Meeker that he needed to stay employed by WDME in order to continue receiving payments, including his insurance benefits and ESOP shares.

76.     Plaintiff has not been allowed to see a copy of Meeker's 2016 employment contract despite the fact that she should have been asked as a Director to approve that employment contract.

77.     No matter the terms of the 2016 employment contract, Meeker has not performed services sufficient to justify the amount of his salary and benefits he has authorized himself to be paid from the Company.

78.     Moreover, during the period that Meeker and Tolander claimed that the Company could not make payments on the Redemption Note, Meeker and Hand had their entire medical insurance premium paid for with Company funds, and they received payments of approximately $35,000 per year for a car allowance.

79.    In 2013, while the Company was behind on the Redemption Note payments according to its amortization schedule, Meeker authorized himself a salary and bonus payment in the amount of $535,000.

80.    At the time that Meeker authorized that payment to himself, there was approximately $250,000 in interest payments due on the Redemption Note that had not been made.

81.    In addition, during the Relevant Period Meeker and Hand have authorized the employment of several of their family members.  Hand's daughter, who is also Meeker's step-daughter, was added to the Company's payroll.   By 2014, Hand's daughter was earning $50,594.38 a year and had received bonuses of $7,300 in 2013 and $2,500 in 2014, in addition to receiving full benefits and commissions.

82.    Hand's daughter continues to be paid her full salary, benefits, and commissions, although she currently works only twelve (12) hours a week in the office, and reportedly another two days from her home, but her hours worked are not documented in any way.  Hand's daughter's salary is not commensurate with that of other Company employees in a similar role.

83.    Furthermore, the Company has engaged in financial transactions with WDMJ Management Corporation ("WDMJ"), which is owned individually (not through the Company or ESOP) by Meeker.

84.    WDMJ owns and leases office space to the Company and its subsidiaries. However, the Company's financial statements regularly show amounts due and payable from WDMJ to the Company.  Financial documents indicate that the Company is not charging

interest to WDMJ (and thus Meeker) on the outstanding payables, and that Meeker transfers funds indiscriminately between the Company and WDMJ.

85.     Although Meeker operates a "Due To/Due From" ledger to document transfers between the Company's subsidiaries and WDMJ, no one other than Meeker has validated those transfers.

86.     WDMJ received $240,146 from WDME's Line of Credit in 2013 that is still outstanding.

87.     Thus, Meeker has caused WDME (the ESOP-owned company) to incur indebtedness related to WDMJ (a Meeker-owned company), a self-dealing transaction that burdened the Company's balance sheet and harmed the ESOP.

88.     WDMJ has never paid interest on that balance, but WDME is continually paying the bank interest on the balance of the outstanding line of credit.  The Participants have been damaged due to this non-interest bearing loan that Meeker approved to himself, because the Company could have used the $240,146 and the interest payments thereon to pay down the Redemption Note and to lower the interest accruing on the Redemption Note.

89.     In addition to adversely impacting the value of the Company (and the corresponding value of the ESOP), Meeker is also actively working to deprive some of the Participants of their ESOP benefits.

90.     Meeker advised Plaintiff and other Company Executives that due to the financial outlook for the Company based on the Due To/Due From ledger (which reflects Meeker draining the Company of its funds), he thought it best to merge CIC Business Credit, Inc. (d/b/a NACM Nashville) with National Association of Credit Management-East

Tennessee (d/b/a "NACM East Tennessee")—an entity that is not part of the ESOP-owned group.

91.    This transaction will be fraudulent, and will diminish the value of the Company (by transferring a business within the ESOP-owned group to a non-controlled entity) and will be detrimental to some of the Participants (the "East Tennessee employees") who will become ineligible for continued participation in the ESOP.

92.    On numerous occasions, Meeker has advised Plaintiff that he wanted to "get the East Tennessee employees out of the ESOP," because they were "dragging it down," and did not deserve ESOP benefits.

93.    Thus, Meeker's plan to divest WDME of NACM Nashville by merging it with NACM East Tennessee would allow Meeker to terminate NACM Tampa's Management Agreement with NACM East Tennessee, thereby accomplishing Meeker's stated goal to kick the East Tennessee employees out of the ESOP.

94.    More fundamentally, Meeker has not permitted Company management to review and comment on the terms and conditions of his proposed merger agreement.

95.    Meeker is ignoring corporate governance protocols, and failing to exercise appropriate business judgment consistent with his fiduciary duties by failing to ensure that WDME and its remaining affiliates in the ESOP-ownership group receive adequate consideration for essentially selling a participating affiliate to a third party (although Meeker-controlled) entity.

96.     Rather, Meeker's plan to merge NACM Nashville into a corporation that is not part of the ESOP owned group, for less than full value, will constitute theft and a fraud in violation of Meeker's duties, including his fiduciary duties under ERISA.

97.     Meeker has advised Plaintiff that the East Tennessee employees will be "kicked out" of the ESOP as of October 31, 2017.

98.     Meeker has also taken steps to close Creditworthy—another entity that is part of the ESOP-owned group.

99.     Meeker notified the Company executive running Creditworthy that the executive is going to retire effective October 31, 2017, and then be paid on a contract basis through December 31, 2017.

100.     Although Meeker did not give the executive a choice regarding his retirement, Meeker told other employees that the Creditworthy executive chose to retire.

101.     Additionally, Meeker appears to be positioning CIC Mortgage for a sale.  As CIC Mortgage's revenue is the largest source of revenue for the Company, CIC Mortgage's removal from the ESOP would have a significant impact on the viability of the ESOP.

102.     Meeker and Tolander have advised Plaintiff that they do not need the Participants to approve any sell of WDME's subsidiaries.

103.     Meeker's and Tolander's attempts to sell or merge WDME or any of its subsidiaries without the Participants approval would be a violation of Tolander's duties under the Trust Agreement, which looks to Florida law to determine the Participants' voting rights .

104.     Chapters 607.1101, 607.1103 and 607.1202 of the Florida Statutes require a vote of the shareholders to approve either a merger (including a merger of a subsidiary

pursuant to chapter 607.1104) or a sale, if such transaction involves the sell, lese, exchange, or disposition of all, or substantially all, of WDME's property.

105.    In the above described situation, Tolander does not have the authority to vote the shares of the Participants, and his attempt to would be a breach of the Trust Agreement. *See* Exhibit B.

106.    Pursuant to section 4.3(t)(2)(ii) of the Trust Agreement:

> **each Participant or Beneficiary of the Plan shall be entitled to direct the Trustee as to the manner in which voting rights on shares** of Company Stock which are allocated to the Company Stock Account of such Participant or Beneficiary are to be exercised with respect to any corporate matter which involves the voting of such shares **with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale o[f] substantially all assets of a trade or business**, or such similar transaction as prescribed in the Regulations.  (emphasis added).

107.    As discussed above, there is no legitimate argument that the sale of CIC Mortgage, or any other WDME subsidiary, would not require a vote of the Participants pursuant to Florida law.

108.    Hand, however, appears to have shed some light on Meeker's motivation for selling CIC Mortgage when she advised Plaintiff that Meeker needed to sell CIC Mortgage so that the Company would have sufficient cash to pay off the Notes due to Meeker and fund her and Meeker's retirement.  Meeker's desire to sell CIC again appears to be for personal reasons and not for legitimate business reasons that are in the best interest of the Company, the ESOP, and its Participants.

109.    CIC Mortgage and Creditworthy have been profitable throughout the period, and CIC Mortgage is actually the most profitable subsidiary in the Company for the past 3 years.  However, both CIC Mortgage's and Creditworthy's financial resources have been depleted by intercompany transactions evidenced on the Due To/Due From ledger, for which there is no explanation, documentation or expense allocation.

**Defendants Have Breached their Fiduciary Duties to the Participants by Failing to Maintain Accurate Books and Records and Failing to Disclose Information to Participants**

110.    The Company's Form 5500 annual reports filed with the Internal Revenue Service ("IRS") and the federal Department of Labor ("DOL") with respect to the ESOP show discrepancies between the information reported therein and information contained in the Company's financial statements.

111.    In other words, the Company's financial records do not match the information that was reported to the IRS and DOL.

112.    When Meeker and Tolander were advised of this discrepancy, Meeker and Tolander claimed that the discrepancy was due to an inadvertent mistake by the accountant, Dwight Reeves, and it had been corrected.

113.    However, the Company's Form 5500 annual report filed with the IRS shows no such correction.

114.    Additionally, the Plan Administrator has provided Meeker and Tolander with the annual reports (including summary annual reports) for Participants required pursuant to Sections 1024(b)(4) and 1025(a)(1), but Tolander and Meeker have failed to distribute those reports to the Participants since 2008.

115.    In summary, Meeker continues to violate his fiduciary duties by: (a) causing the Company to pay Meeker on-going compensation and benefits that exceed the value of his on-going services being provided; (b) causing the Company to pay expenses incurred by (or to make loans to) businesses owned by Meeker, without interest or full reimbursement to the Company; (c)   causing the Company to make payments to Meeker and Hand, such as expense reimbursements, full insurance benefits, and a car allowance, although Meeker has no on-going ownership interest and provides only limited services; (d) preventing the Company from prepaying (or potentially refinancing) certain ESOP related indebtedness even though the indebtedness arguably carries an above-market rate of interest; (e) controlling the operation of the ESOP in all material respects; (f) preventing other Company personnel from having contact with the ESOP Trustee; (g) attempting to sell substantial assets for personal reasons unrelated to what is in the best interests of the Company, the ESOP and its Participants; and (h) attempting to fraudulently deprive Participants of their retirement benefits by attempting to oust the Participants from the ESOP.

116.    Tolander continues to violate his fiduciary duties as the ESOP Trustee when, given his knowledge of the Company and its business practices (including self-dealing related transactions, inconsistent financial statements, and dissipation of ESOP assets), he continues to vote the ESOP shares to elect (and re-elect) Meeker and Hand as Directors.

117.    Tolander also continues to over-step his legal authority as a neutral ESOP Trustee and involve himself in the day-to-day business of the Company, including exerting false authority to unilaterally not renew executive contracts, in an attempt to cover up Meeker's and Hand's wrong doing.

118.    Finally, Meeker and Hand, as Directors, have violated their fiduciary duties in the following manner: (a) failing to oversee the preparation of accurate and consistent financial statements (that are essential to the annual ESOP share price valuation); (b) failing to investigate whether to replace the ESOP Trustee; and (c) taking unearned funds and benefits from the Company.

## CLASS ACTION ALLEGATIONS

119.    Plaintiff brings this action individually as a Participant, and on behalf of all Participants of the ESOP as a class action pursuant to Federal Rule of Civil Procedure 23.

120.    The Class consists of all Participants in the ESOP for the Relevant Period through the Present. Excluded from the Class are Defendants and any person affiliated with any Defendant.

### Numerosity

121.    The Class is so numerous that joinder of all members is impracticable. According to the ESOP Account Activity Report ending as of October 31, 2016 there are 49 or more Participants in the ESOP (the "Class").

### Commonality

122.    There are questions of law and fact which are common to the Class, which predominate over any individual issues. The common questions include, but are not limited to, the following:

a.    Whether Meeker breached his fiduciary duties pursuant to 29 U.S.C. §§ 1104 and 1105 (§§ 404 and 405 of ERISA), and other applicable provisions, as actionable pursuant to 29 U.S.C. § 1132(a)(2) and (3) (§502 of ERISA);

b.      Whether Hand breached her fiduciary duties 29 U.S.C. §§ 1104 and 1105 (§§ 404 and 405 of ERISA), and other applicable provisions, as actionable pursuant to 29 U.S.C. § 1132(a)(2) and (3) (§502 of ERISA);

c.      Whether Tolander breached his fiduciary duties pursuant to 29 U.S.C. §§ 1104 and 1105 (§§ 404 and 405 of ERISA), and other applicable provisions, as actionable pursuant to 29 U.S.C. § 1132(a)(2) and (3) (§502 of ERISA);

d.      Whether Meeker and Hand have been unjustly enriched pursuant to Florida law due to their improper actions;

e.      Whether Plaintiff and the Class are entitled to injunctive relief; and

f.      Whether Plaintiff and the Class are entitled to an imposition of a Constructive Trust for any amounts by which any Defendant was unjustly enriched at the expense of the ESOP.

## Typicality

123.    Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class.

## Adequacy of Representation

124.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

125.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of

the Class which would establish incompatible standards of conduct for the party opposing the Class.

126.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of in this Complaint, thereby making appropriate the declaratory and injunctive relief sought herein with respect to the Class as a whole.

127.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this case and controversy.

WHEREFORE, Plaintiff respectfully requests that this Court certify a class composed of all Participants in the ESOP during the Relevant Period, with the exception of the Defendants and individuals related to the Defendants, and grant such other relief as this Court deems appropriate.

## RULE 23.1(b) DERIVATIVE ALLEGATIONS

128.    Plaintiff is a Participant and fiduciary of the ESOP and therefore is authorized pursuant to 29 U.S.C. § 1132(a)(2) (§502 of ERISA) to bring this action derivatively.

129.    Moreover, this action is not a collusive one intended to confer jurisdiction that the Court would otherwise lack.

130.    As discussed below, Plaintiff presented Meeker, as the Chairman of the Board, and Tolander with a written list of concerns regarding financial irregularities and demanded that the Board take action to rectify any violations of law.  *See* **Exhibit "G."**

131.    After being presented with the Demand Letter, Meeker and Tolander advised Plaintiff that Ms. Womack and legal counsel were "just confused" about the ESOP, and

refused to take any corrective actions to remedy the issues Plaintiff raised in the Demand Letter.

132.    Additionally, prior to and after the annual ESOP meeting, Plaintiff compiled a list of questions that WDME employees had submitted to her regarding the ESOP. *See* a true and accurate copy of the ESOP Questions attached hereto as "**Exhibit H."** However, Tolander did not attend the ESOP meeting, and advised Plaintiff before the meeting that he was not going to review or respond to the employees' questions.

133.    Rather than responding to the questions the Participants raised, Tolander assisted Meeker in preparing and distributing the answer to three questions Tolander and Meeker proposed regarding the sale of the ESOP assets. Thus, it is clear that Tolander is aware of Meeker's plans to further dissipate the ESOP's assets, and that Tolander is not only complicit in that plan, but is acting willfully to harm the Participants.

134.    Accordingly, Plaintiff, and others similarly situated, exhausted all administrative remedies under the ESOP, and further demands upon Defendants would have been futile and inadequate to preserve and protect the ESOP's assets.

135.    WDME, as the Derivative Defendant sued in this Complaint, cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action for the reasons detailed above. Therefore, Plaintiff's demand upon the Company to take the action requested herein is excused as futile, although Plaintiff presented the Defendants with the information necessary for them to take action. *See* Exhibit "G."

136.    Additionally, immediate action is needed rather than waiting the time required by Florida law after demanding that the Board take action, because as discussed above, Defendants are planning to sell or merge assets of the Company, which will irreparably harm Plaintiff and the Participants, and with the exception of Plaintiff, the other members of the Board (Meeker and Hand) have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors for the violations of the laws complained of in this Complaint.

137.    As husband and wife, Meeker and Hand, will not vigorously prosecute any action against the other.  And, Meeker has demonstrated that he will take whatever actions are necessary to prevent Plaintiff from fulfilling her fiduciary obligations to the Participants.

138.    Common to all Counts of this Complaint, Plaintiff has been required to retain legal counsel to enforce her individual rights, as well as the rights of the Participants and Company, and seek recovery of all reasonable attorneys' fees and costs incurred in this action.

## COUNT I: BREACH OF FIDUCIARY DUTY UNDER ERISA §502(a), 29 U.S.C. § 1132(a) AGAINST MEEKER AND HAND

139.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-138 above.

140.    Pursuant to ERISA  §502(a)(3), 29 U.S.C. § 1132 (a)(3), participants, beneficiaries, and fiduciaries may sue to: "enjoin any act or practice which violates any provision of this subchapter [e.g., fiduciary provisions] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

141.    Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), any fiduciary who breaches any of the responsibilities, obligations or duties imposed by ERISA § 404 shall be personally liable to make good to a plan any losses to that plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

142.    Meeker and Hand are Directors of the Company.  During the Relevant Period, Meeker and Hand each was a fiduciary within the meaning of ERISA, because he or she exercised discretionary authority or discretionary control with respect to the appointment of the ESOP fiduciaries and with respect to the management of the ESOP, he or she possessed discretionary authority or discretionary responsibility in the administration of the ESOP, and he or she exercised authority or control with respect to the management of the ESOP's assets.

143.    By engaging in the acts and omissions above, Meeker and Hand breached their respective fiduciary duties by, among other things, failing to prudently and loyally manage the ESOP's assets, by acting in their own interests rather than solely in the interests of the participants and beneficiaries, by failing to avoid conflicts of interest and promptly resolving them, by failing to engage independent fiduciaries who could make independent judgments concerning the ESOP's assets, and by otherwise placing their own interests above the interests of the participants with respect to the use and management of the ESOP's assets.

144.    For example, among other things, Meeker failed to obtain approval from an independent board of directors for payment of and increases to his salary, bonuses, and benefits.

145.    Hand was aware, among other things, of Meeker's failure to obtain such approval and took no action to protect the ESOP assets or Participants.

146.    Pursuant to ERISA § 404, Meeker and Hand had a duty to discharge their duties with respect to the Plan solely in the interests of the participants and for the exclusive purpose of providing benefits to the participants.

147.    Pursuant to ERISA § 405, Meeker and Hand are liable for a breach of fiduciary responsibility of another fiduciary with respect to the same ESOP, because as alleged above, each participated knowingly in, or knowingly undertook to conceal, an act or omission of the other fiduciary, knowing such act or omission is a breach.

148.    By Meeker's and Hand's failure to comply with ERISA § 404(a)(1) in the administration of their specific responsibilities which give rise to their status as a fiduciary, Meeker and Hand have each enabled the other fiduciary to commit a breach; or Meeker and Had each had knowledge of a breach by the other fiduciary, and failed to take reasonable efforts under the circumstances to remedy the breach.

149.    Meeker and Hand engaged in prohibited transactions pursuant to ERISA § 406, by causing the ESOP to engage in a transaction that they knew or should have known constituted Meeker's and Hand's direct or indirect use of the ESOP's assets for Meeker's and Hand's own benefit.

150.    As a consequence of Defendants' breaches, the ESOP and its Participants suffered losses and continue to suffer losses.

151.    Defendants are individually liable to make good to the ESOP and its Participants any losses to the ESOP and its Participants resulting from each breach.

**WHEREFORE**, pursuant to ERISA § 502(a)(3), 11 U.S.C. § 1132(a)(3), Plaintiff demands judgment against Meeker and Hand awarding Plaintiff and the Participants

actual damages in the amount of any losses the ESOP suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses, pre-judgment and post-judgment interest, attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), appropriate equitable relief, including in the form of injunctive relief and restitution, and such other relief as is fair and just.

## COUNT II: BREACH OF FIDUCIARY DUTY UNDER ERISA §502(a), 29 U.S.C. § 1132(a) AGAINST TOLANDER

152.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-138 above.

153.    Pursuant to ERISA §502(a)(3), 29 U.S.C. § 1132 (a)(3), participants, beneficiaries, and fiduciaries may sue to: "enjoin any act or practice which violates any provision of this subchapter [e.g., fiduciary provisions] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

154.    Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), any fiduciary who breaches any of the responsibilities, obligations or duties imposed by ERISA § 404 shall be personally liable to make good to a plan any losses to that plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

155.    Tolander is the ESOP Trustee.  During the Relevant Period, Tolander was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the management of the ESOP, he possessed discretionary authority or discretionary responsibility in the administration of the ESOP, and he exercised authority or control with respect to the management of the ESOP's assets.

156.    Pursuant to ERISA § 404, Tolander had a duty to discharge his duties with respect to the ESOP solely in the interests of the Participants and for the exclusive purpose of providing benefits to the Participants.

157.    By engaging in the acts and omissions above, Tolander breached his respective fiduciary duties by, among other things: failing to prudently and loyally manage the ESOP's assets; acting in Meeker's and Hand's best interests rather than solely in the interests of the Participants and beneficiaries; failing to engage independent fiduciaries who could make independent judgments concerning the ESOP's assets; failing to disclose ESOP annual reports to Participants; and failing to monitor the Board and its payment of debts and dissipation of ESOP assets.

158.    Particularly, without limiting the foregoing, Tolander has exercised discretion and control over both the ESOP and the Company, yet has failed to ensure that executive compensation is not excessive and is not unfairly dilutive to the ESOP, and to take action to carry out his duties under ERISA.

159.    Tolander breached that duty when among other things he failed to take action to prevent Meeker and Hand from authorizing excessive compensation for themselves.

160.    The payments that Tolander allowed Meeker and Hand to accept directly damaged the Participants by preventing a timely and prudent repayment of the Redemption Note and ESOP Note.

161.    Additionally, the Participants have been damaged by Tolander's failure to ensure that payments were being made to the ESOP, rather than being diverted for Meeker's

and Hand's own interest, such as for no-interest loans to WDMJ, and payment of Meeker's and Hand's expenses, car allowances, and insurance benefits.

162.    As a consequence of Tolander's breaches, the ESOP suffered losses.

163.    Tolander is individually liable to the ESOP for the amount of damages caused to the ESOP as a result of Tolander's breaches of his fiduciary duties.

164.    Moreover, due to Tolander's willful violations and bad faith, he should be barred from using ESOP assets to defend himself in this matter.

**WHEREFORE**, pursuant to ERISA § 502(a)(3), 11 U.S.C. § 1132(a)(3), Plaintiff demands judgment against Tolander and awarding Plaintiff and the Participants actual damages in the amount of any losses the ESOP suffered, to be allocated among the Plaintiff's and Participants' individual accounts in proportion to the accounts' losses, pre-judgment and post-judgment interest, attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), appropriate equitable relief, including in the form of injunctive relief and restitution, and such other relief as is fair and just.

**COUNT III: UNJUST ENRICHMENT AGAINST MEEKER AND HAND**

165.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 138 above, as if fully set forth herein.

166.    This is a cause of action for unjust enrichment against Meeker and Hand pursuant to Florida law, and is in the alternative to Count I above.

167.    This  Court has supplemental jurisdiction to hear this claim pursuant to 28 U.S.C. § 1367(a), because the claim is so related to the federal claims in this action for which

this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

168.    Meeker and Hand have used the Company's assets for their own benefit, to the detriment of the ESOP and its Participants.  Such use conflicts with the fundamental principles of justice, equity and good conscience.

169.    Meeker and Hand are in possession of the Company's property, including the Company's funds, which are of great value to the Company and Participants.

170.    Meeker and Hand have retained the Company's property and continue to benefit from it.

171.    Meeker has caused the Company to confer benefits upon himself and Hand, which Meeker and Hand have accepted and appreciated.

172.    Meeker's and Hand's wrongful conduct, as described herein, render their use and retention of the Company's and ESOP's property inequitable, unless those benefitting from such use and retention pay for the value thereof  that each has received to date.

173.    As a direct and proximate result of the conduct by Meeker and Hand, the Company and the Participants have been damages.  Specifically, the ESOP has not been funded to the level it should have been, and the ESOP's liabilities were not extinguished when they should have been, had Meeker and Hand not diverted the Company's profits for their own use.

WHEREFORE, Plaintiff demands judgment against Meeker and Hand and in favor of herself and all similarly situated Participants, awarding damages, pre-judgment and post-judgment interest, attorneys' fees and costs, imposing a constructive trust for any

amounts by which Meeker and Hand were unjustly enriched at the expense of the ESOP, and such other relief as is fair and just.

## COUNT IV: CLAIM FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

174.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 164 above, as if fully set forth herein.

175.    Pursuant to 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)), this Court may award appropriate equitable relief to redress the Defendants' violations or to enforce any provision of ERISA.

176.    As alleged herein, the Defendants knowingly, willfully, and recklessly breached their fiduciary duties under ERISA, as well as their duties of good faith, loyalty and due care owed to the Participants pursuant to Florida law, because, among other reasons, Defendants failed to act in the best interest of the Participants and placed their own interest or the interests of others over the interests of the Participants.

177.    Plaintiff and the Class have a substantial likelihood of success on the merits of their claims, as the Defendants' actions are clearly inconsistent with Florida and federal law.

178.    Plaintiff and the other members of the Class have no adequate remedy at law. Only through the use of this Court's equitable powers can Plaintiff and the Class be protected from irreparable injury that the Defendants' actions have caused and continue to cause.

179.    Unless this Court enjoins Defendants from continuing to breach their fiduciary duties, the Defendants will continue to knowingly, willfully, or recklessly, and in bad faith, breach their fiduciary duties owed to Plaintiff and the Class, and cause permanent losses to the Participant's retirement benefits that cannot be recovered due to the Defendants actions.

**WHEREFORE**, Plaintiff prays for a preliminary and permanent injunction:

a.      enjoining any act or practice which violates any provision of ERISA or the terms of the ESOP;

b.      barring Defendants from selling, transferring, spending, or otherwise accessing the Company's or the ESOP's assets, including all bank accounts, investment accounts, or other financial accounts;

c.      prohibiting Defendants from directly or indirectly contacting the Company's employees and Participants, due to Meeker's history of threatening to terminate their employment and coercing the employees to transfer the Company's assets to Meeker;

d.      barring Defendants from directly or indirectly engaging in or directing the management of the Company's or the ESOP's daily business activities;

e.      barring Defendants from accessing the books and records of the Company or ESOP without supervision, or otherwise destroying, altering, or absconding with the books and records of the Company or the ESOP;

f.      allowing Ms. Womack, or other designated forensic accountant, complete and total access to the financial records of the Company and WDMJ, so as to allow for a full investigation, accounting and reconstruction of the transfer of funds during the Relevant Period;

g.      removing Tolander as the ESOP Trustee and ordering the appointment of a neutral, noninterested Trustee; and

h.      freezing all actions by the Board until neutral, noninterested Board members may be elected by the neutral Trustee in a fair and impartial election.

**WHEREFORE,** Plaintiff demands judgment as alleged herein pursuant to Counts I through IV  in her favor individually, and on behalf of all other similarly situated Participants.

## TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Christi A. Lawson
Christi A. Lawson
Florida Bar No. 0498351
clawson@foley.com
FOLEY & LARDNER LLP
111 N. Orange Ave., Suite 1800
Orlando, FL 32801
Telephone:  407.423.7656
Facsimile:  407.648.1743
Attorneys for the Plaintiff

## VERIFICATION STATEMENT

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Angela Harwood Brent